**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | |
|---|---|
| A.B. | : |
| 3311 North Bouvier Street | : |
| Philadelphia, PA 19140 | : |
| | : |
| v. | : |
| | :        NO. |
| CITY OF PHILADELPHIA | : |
| 1401 J.F.K. Boulevard | : |
| Philadelphia, PA 19102 | : |

**EMERGENCY ORDER**

AND NOW, to wit, this _____ day of _____, 2022, upon

consideration of Petitioner's Petition for an Emergency Stay of adoption proceedings, it is hereby

ORDERED and DECREED, that said Petition is GRANTED.

The adoptions of the minor children known as "J.M.B." "M.A.G.J.B." and "H.A.M.W."

are stayed pending further order from the Court.

By the Court:

_____

J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| A.B. | : | |
| 3311 North Bouvier Street | : | |
| Philadelphia, PA 19140 | : | |
| | : | |
| v. | : | |
| | : | NO. |
| CITY OF PHILADELPHIA | : | |
| 1401 J.F.K. Boulevard | : | |
| Philadelphia, PA 19102 | : | |

**ORDER**

AND NOW, to wit, this _____ day of _____, 2022, upon consideration of Petitioner's Petition to Set Aside Orders terminating her parental rights for the minor children known as J.M.B., M.A.G.J.B., and H.A.M.W, and any responses thereto, it is hereby ORDERED and DECREED, that said Petition is **GRANTED**.

The Orders as to as J.M.B., M.A.G.J.B., and H.A.M.W are hereby set aside, and the Philadelphia Court of Common Pleas is hereby directed to schedule a new trial in the Matter of A.B.

By the Court:

_____

J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| A.B. | : | |
| 3311 North Bouvier Street | : | |
| Philadelphia, PA 19140 | : | |
| | : | |
| v. | : | |
| | : | NO. |
| CITY OF PHILADELPHIA | : | |
| 1401 J.F.K. Boulevard | : | |
| Philadelphia, PA 19102 | : | |

**RULE TO SHOW CAUSE**

AND NOW, to wit, this _____ day of _____, 2022, upon consideration of Petitioner's Petition to Set Aside Orders terminating her parental rights for the minor children known as J.M.B., M.A.G.J.B., and H.A.M.W, a rule is issued by upon Defendant to show cause why the relief sought should not be granted.

This Rule is returnable on the _____ day of _____, 2022, in Courtroom _____ at _____ o'clock at the Federal Courthouse located at 601 Market Street, Philadelphia, PA.

By the Court:

_____

                                                    J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

A.B.                                          :
3311 North Bouvier Street                     :
Philadelphia, PA 19140                        :
                                              :
            v.                                :
                                              :        NO.
CITY OF PHILADELPHIA                          :
1401 J.F.K. Boulevard                         :
Philadelphia, PA 19102                        :

**PETITION**

1.      Petitioner is an individual residing at the address above given.

2.      Defendant, City of Philadelphia is a political subdivision of the Commonwealth of

Pennsylvania, with its principal place of business located at the address above given.

3.      At all times relevant hereto, Defendant acted by and through its agents, servants,

workmen, and/or employees who, at all times relevant hereto, were acting within the course and

scope of their employment with Defendant and in furtherance of Defendant's business.

**JURISDICTION**

4.      Jurisdiction is proper in this Court because the Complaint alleges violations of

Petitioner's Constitutional Rights.

**VENUE**

5.      Venue is proper in this jurisdiction as all the events that make up the basis for each

of the causes of action arose in this jurisdiction as well as the fact that it is also where Defendant's

principal place of business is located.

**FACTS**

6.     Petitioner is the biological mother of minor children, who shall be known as J.M.B., J.B., M.B., H.A.M.W., H.W., and M.A.G.J.B. (Hereinafter collectively referred to as minor children"

7.     Petitioner was the subject of a petition filed by the Philadelphia Department of Human Services seeking to terminate her parental rights and/or to change the permanency goal for each child to adoption.

8.     Hearings were held on April 28, 2021, and June 1, 2021.

9.     After said hearings, the Court in the Philadelphia Court of Common pleas issued six orders pertaining to J.M.B., M.A.G.J.B. and H.A.M.W.

10.     Three of the orders terminated Petitioner's parental rights to each of the children.

11.     The other three orders changed the permanency goal for each of the children to adoption.

12.     Petitioner appealed the decision to the Pennsylvania Superior Court, which affirmed the orders on December 14, 2021.  A copy of the Superior Court decision is attached hereto and marked as Exhibit "A."

13.     One basis of appeal was whether The Superior Court's opinion focused on Petitioner's then counsel's inability to get 13 exhibits into evidence.

14.     The Superior Court referred to these documents as unauthenticated hearsay. Exhibit "A," page 9.

15.     The Superior Court also specifically stated that "appeared to be unprepared for objections that the documents were unauthenticated hearsay." Exhibit "A," page 9.

16.     The trial court had explained that none of Mother's proffered exhibits "were self-identifying [or] self-authenticating, and thus did not comply with PA R.E. 902." Therefore, the documents were properly excluded from the trial.

17.     Upon information and belief, had the documents been introduced into evidence, it is possible that the six orders would not have been entered.

18.     A parent has a fundamental constitutionally protected interest in parental rights.

19.     Accordingly, a parent has a right to effective assistance of counsel.

20.     Petitioner's then counsel failed to produce witnesses who could authenticate the documents.

21.     Such conduct is egregious, especially considering a parent facing the termination of her parental rights.

22.     Petitioner's prior counsel's conduct rises to the level of ineffective assistance.

23.     Although Petitioner's appeal did address the question of her then Counsel's conduct, it does not appear to have been presented as a violation of her constitutional right to effective assistance of counsel.

24.     Upon information and belief, there are current proceedings to adopt each of the three children which are going to be finalized within the next two weeks.

25.     Petitioner seeks an immediate stay of the adoption proceedings, pending the outcome of a new trial to determine the underlying petitions.

26.     Time is of the essence.

**COUNT I**
**EMERGENCY PETITION TO STAY ADOPTION**

27.     Petitioner incorporates by reference the averments contained in all previous paragraphs as if more fully set forth herein.

28.     Petitioner seeks an emergency stay of the adoption proceedings.

29.     If the adoption proceedings are finalized and then it is determined that Petitioner's parental rights should not have been terminated, then the children will be harmed in that they will have bonded with their new families, only to be removed at a later date.

30.     The goal should always be to do what is in the best interests of the children.

31.     It is in the best interests of the children to have the determination of their biological mother's rights before any such bond is created with the proposed adoptive parents.

32.     If the Court grants the stay, it will maintain the status quo and no party will be prejudiced.

WHEREFORE, Petitioner respectfully requests that this Honorable Court issue an order staying the adoption proceedings pending the outcome of this action and any subsequent trial to re-determine the petitions in the underlying case.

## COUNT II
## PETITION FOR A NEW TRIAL BASED
## ON INEFFECTIVE ASSISTANCE OF COUNSEL

33.     Petitioner incorporates by reference the averments contained in all previous paragraphs as if more fully set forth herein.

34.     Petitioner's then counsel attempted to introduce thirteen documents into evidence which were rejected by the trial court.

35.     The Superior Court acknowledged that the Petitioner had a constitutional right to effective assistance of counsel.

36.     It also acknowledged that the attorney may have been ineffective, but because it deemed that the conduct did not result in a complete preclusion of certain evidence then there was no basis to reverse on that ground.  Exhibit "A," page 10,

37.     The Court stated that the evidence would "merely[go] to the weight of other evidence presented, by both Mother and DHS."

38.     With all due respect to the Superior Court, it missed the point entirely with regard to the significance of the evidence.

39.     As the Court duly noted, "Mother's argument does not acknowledge that the trial court extensively considered her testimony — that she was making progress toward her goals — with the evidence by DHS that she was not."

40.     As such, the introduction of the documents was critical to support and confirm Petitioner's testimony.

41.     This is particularly true because DHS was required to prove its position by clear and convincing evidence.

42.     There is nothing in any record to establish that if the trial court had had the ability to review the rejected documents, that the decision would have been the same.

43.     Authenticating documents is simply a matter of getting either a stipulation or producing witnesses to testify about the documents.

44.     There is no excuse for Petitioner's then trial counsel to not obtain a stipulation or subpoena the necessary witnesses to assure their attendance at trial.

45.     Petitioner's then counsel was ineffective.

46.     Petitioner was denied her constitutional right to effective assistance of counsel.

47.     A new trial is necessary to adjudicate Petitioner's fitness as a parent, with all the evidence being presented for consideration by the Court.

WHEREFORE, Petitioner respectfully requests that the orders terminating Petitioner's parent rights, as well as the orders changing the goal to adoption be vacated and a new trial be ordered.

FEINSTEIN & FIORAVANTI

BY:_____

Steven C. FEINSTEIN, ESQUIRE
657 Exton Commons
Exton, PA 19341
610.410.9680
Steven.C.Feinstein.Esq@gmail.com
Attorney for Petitioner

Date:   May 10, 2022

EXHIBIT "A"

J-A26040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.B., | : | IN THE SUPERIOR COURT OF |
| A MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.B., MOTHER | : | No. 1281 EDA 2021 |

Appeal from the Order Entered June 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000081-2021


| | | |
|---|---|---|
| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.B., MOTHER | : | No. 1282 EDA 2021 |

Appeal from the Order Entered June 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000737-2017


| | | |
|---|---|---|
| IN THE INTEREST OF: M.A.G.J.B., | : | IN THE SUPERIOR COURT OF |
| A MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.B., MOTHER | | No. 1283 EDA 2021 |

Appeal from the Order Entered June 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000082-2021

J-A26040-21

| | | |
|---|---|---|
| IN THE INTEREST OF: M.B., <br> A MINOR | : <br> : <br> : <br> : <br> : | IN THE SUPERIOR COURT OF <br> PENNSYLVANIA |
| APPEAL OF: A.B., MOTHER | : | No. 1284 EDA 2021 |

Appeal from the Order Entered June 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000163-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: H.A.M.W., <br> A MINOR | : <br> : <br> : <br> : <br> : | IN THE SUPERIOR COURT OF <br> PENNSYLVANIA |
| APPEAL OF: A.B., MOTHER | : | No. 1285 EDA 2021 |

Appeal from the Order Entered June 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000083-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: H.W., <br> A MINOR | : <br> : <br> : <br> : <br> : | IN THE SUPERIOR COURT OF <br> PENNSYLVANIA |
| APPEAL OF: A.B., MOTHER | : | No. 1286 EDA 2021 |

Appeal from the Order Entered June 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002042-2018

BEFORE:    BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED DECEMBER 14, 2021**

This termination of parental rights matter pertains to three children:

J.M.B. (hereinafter, J.B.), M.A.G.J.B. (hereinafter, M.B.) and H.A.M.W.

- 2 -

(hereinafter, H.W.).[1]  A.B. (Mother) appeals from the six orders entered the same day in the Philadelphia County Court of Common Pleas: three, which terminated her parental rights to each of the children, and three, which changed the permanency goal for each child to "adoption."  On appeal, Mother: (1) presents various claims that she was denied due process and a full and fair evidentiary hearing; and (2) avers both the termination orders and goal change orders were not supported by clear and convincing evidence.  We affirm.

## I.  Facts & Procedural History

J.B. was born in 2013, and M.B. was born in 2018.  Their father is G.J.  The middle child, H.W. was born in 2017.  His father is M.W., who was incarcerated at the time of the termination and goal change hearings

---

[1] All three children are known by different initials in the captions.  J.M.B. (Docket 1281 EDA 2021) is the same child as J.B. (Docket 1282 EDA 2021).  M.A.G.J.B. (Docket 1283 EDA 2021) is M.B. (Docket 1284 EDA 2021).  H.A.M.W. (Docket 1285 EDA 2021) is H.W. (Docket 1286 EDA 2021).

The parental rights of H.W.'s father, M.W., were terminated the same day.  His appeals from that order, as well as the goal change order, are currently pending before this same panel at 1217 EDA 2021 and 1218 EDA 2021.

The parental rights of J.B. and M.J.'s father, G.J., were likewise terminated.  His appeals are pending before this Court at 1344 EDA 2021, 1345 EDA 2021, 1346 EDA 2021, and 1347 EDA 2021.

(collectively, "termination hearings").[2]  Both fathers appeared at the hearings by telephone or video.

The trial court issued a thorough, 45-page opinion summarizing the evidence presented, not only at the termination hearings of April 28 and June 1, 2021, but also at the regular permanency hearings, dating back to June of 2019.  Because we write solely for the benefit of the trial court and the parties, who are well familiar with the evidence presented, we need not reproduce the entire factual and procedural history.  Instead, we adopt the summary set forth in the trial court's opinion.  ***See*** Trial Ct. Op., 7/27/21, at 2-15, 18-22 (testimony of parental capacity evaluator, Dr. William Russell), 22-29 (testimony of Turning Points for Children Caseworker Jasmine Jackson), 29-33 (testimony of Mother).

Nevertheless, for ease of review, we highlight the following.  The children were adjudicated dependent on June 6, 2019, when J.B. was five years old, H.W. was two years old, and M.B. was six months old.  One year and eight months thereafter, the Philadelphia Department of Human Services (DHS) filed the underlying petitions to terminate Mother's parental rights, on February 16, 2021.  The trial court conducted hearings on April 28 and June 1, 2021.  Following the latter hearing, the court entered the underlying six

---

[2] H.W.'s and M.B.'s birth certificates did not list a father.  Trial Ct. Op., 7/27/21, at 1-2.  However, at the termination hearings, M.W. appeared as H.W.'s father, and G.J. appeared as M.B.'s father (as well as J.B.'s father).

- 4 -

orders, which, respectively, terminated Mother's parental rights and changed the children's permanency goals to adoption.  At this time, J.B. was seven years old, H.W. was four years old, and M.B. was two and a half years old.

Mother filed timely, separate notices of appeal from each of the orders.[3] This Court *sua sponte* consolidated the six appeals.

## II.  Statement of Questions Involved

Mother presents the following issues for our review:

1. Did the trial court violate Mother's Fourteenth Amendment due process rights and abuse its discretion when it failed to conduct a full and fair evidentiary hearing?

2. Were the trial court's orders terminating Mother's parental rights supported by clear and convincing evidence?

3. Were the trial court's orders changing the goals to adoption supported by clear and convincing evidence?

Mother's Brief at 12-13.

## III.  Standard of Review

We note the relevant, general standard of review:

The standard of review which this Court employs in cases of dependency is broad.  However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court.  We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear

_____

[3] **See Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) ("[W]here a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case.").  **See also In the Int. of K.M.W.**, 238 A.3d 465, 470 (Pa. Super. 2020) (*en banc*) (**Walker** applies to children's fast track cases).

> before him.  Relying upon his unique posture, we will not overrule
> his findings if they are supported by competent evidence.

*In re M.P.*, 204 A.3d 976, 985 (Pa. Super. 2019) (citations omitted).

Moreover, we have stated:

> It is this Court's responsibility to ensure that the record represents
> a comprehensive inquiry and that the hearing judge has applied
> the appropriate legal principles to that record.  Nevertheless, we
> accord great weight to the court's fact-finding function because
> the court is in the best position to observe and rule on the
> credibility of the parties and witnesses.

*Interest of D.P.*, 972 A.2d 1221, 1225 (Pa. Super. 2009) (citation omitted).

### IV.  Mother's Due Process Claims

Mother first presents various claims that she was denied a full and fair

hearing.  We address these *seriatim*.  Initially, she avers the court violated

her due process rights by "abruptly terminat[ing]" the remote video testimony

of G.J. — J.B. and M.B.'s father.  Mother's Brief at 39.  Mother recounts that

G.J., who was incarcerated and testifying by video, had "technical difficulties

with his audio connection," and avers the "court did not suggest a short recess

to allow [him] to fix the connection."  *Id.*  Mother contends, without further

explanation, that if G.J. were "able to keep testifying, he likely would have

provided additional evidence to support Mother's defense.  But he never had

a change to do so."  *Id.* at 40.

By way of background, G.J. appeared by video at the June 1, 2021,

termination hearing.  G.J. stated he was "in a house," "at work."  N.T., 6/1/21,

at 71.  Technical difficulties with his video connection arose, and the trial court

asked G.J.'s attorney, who was present in court, for G.J.'s telephone number. *See id.* at 68; Trial Ct. Op. at 37.  Counsel replied he did not have it and, when questioned by the trial court, could not recall the last time he talked to G.J.  *See* N.T., 6/1/21, at 69-70 (counsel first stating he talked to G.J. sometime since the "last hearing," and upon further questioning by the court, stating they "had a conversation after the case was [last] continued," but he could not recall the date).  The trial court found G.J. waived his right to participate in the hearing due to his and counsel's failure to "[s]ecure a good line of communication and be in a position to present testimony to the Court just like everyone else on this call."[4]  *Id.* at 71.

In response to Mother's claim, that the termination of G.J.'s remote video testimony deprived **her** of her due process rights, the trial court found Mother's argument vague:

> Mother's allegation . . . is a broad assertion that does not state the basis of her claim.  This Court cannot speculate what Mother's allegations are where she only stated that [G.J.'s missing] testimony somehow would have supported her case and changed the decision of this Court.

---

[4] Counsel further stated he had expected G.J. to be in court that day.  N.T., 6/1/21, at 72.

On appeal, Mother's characterization, that the trial court "abruptly terminated [G.J.'s] remote testimony," ignores the above circumstances — that the trial court found G.J. and counsel failed to secure a reliable video connection, and that counsel failed even to have a contact telephone number for G.J.  *See* Appellant's Brief at 39; N.T., 6/1/21, at 69, 71.

> Mother was never denied the opportunity to participate, testify, and present evidence on her behalf.  She participated in the hearings on October 27, 2020, April 28, 2021 and June 1, 2021.  Mother and [G.J.] testified on October 27, 2020 and June 1, 2021 and their attorneys were present . . . and presented evidence.  Mother was not denied a fair and impartial hearing by this Court.

Trial Ct. Op. at 35 (paragraph break added).

Despite this clear discussion by the trial court, on appeal, Mother continues to omit from her argument any explanation as to what G.J. was prevented from testifying to, nor how it would have supported her position. Indeed, Mother does not address, let alone dispute, the trial court's finding that she has failed to "state the basis of her claim."  **See** Trial Ct. Op. at 35. Given the lack of any supporting discussion, we conclude this issue is waived. **See** Pa.R.A.P. 2119(a) (argument shall include such discussion and citation of authorities as are deemed pertinent); **Harris v. Toys "R" Us-Penn, Inc.**, 880 A.2d 1270, 1279 (Pa. Super. 2005) ("We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review.  Pa.R.A.P. 2119(b)[.]").

Next, Mother avers she was deprived of her due process rights because her attorney "failed to introduce relevant and probative evidence of her compliance with DHS goals," and thus deprived her of a full and fair hearing. Mother's Brief at 41, 43.  In support, Mother claims, "Although her attorney pre-marked thirteen exhibits showing Mother's compliance with the DHS goals, he did not succeed in getting any of the exhibits introduced into

evidence.  Indeed, counsel appeared to be unprepared for objections that the documents were unauthenticated hearsay."  *Id.* at 42.   These exhibits included "a PHA Waitlist Eligibility Interview Invitation," which would have "show[n] that Mother was working to obtain better housing for her family." *Id.* at 21-22.  Mother thus requests this Court reverse and remand for the appointment of new counsel.

> Preliminarily, we note:

> The unique nature of parental termination cases has long been recognized by the Supreme Court of Pennsylvania.  Thus, [in] *In Re: Adoption of R.I.*, . . . 312 A.2d 601 (Pa. 1973), the Supreme Court held that an indigent parent in a termination of parental rights case has a constitutional right to counsel.  The right to counsel in parental termination cases is the right to effective assistance of counsel even though the case is civil in nature. However, this right is more limited than that in criminal cases, as claims of ineffective assistance of counsel must be raised on direct appeal.  We then review the record as a whole to determine whether or not the parties received a "fundamentally fair" hearing; a finding that counsel was ineffective is made only if the parent demonstrates that counsel's ineffectiveness was "the cause of the decree of termination."  . . .

*In the Interest of J.T.*, 983 A.2d 771, 774-75 (Pa. Super. 2009) (some citations omitted).

Here, the trial court explained that none of Mother's proffered exhibits "were self-identifying [or] self-authenticating, and thus did not comply with Pa.R.E. 902.[ ]"  Trial Ct. Op. at 39.  *See* Pa.R.E. 902 (listing types of evidence that are self-authenticating, or "requir[ing] no extrinsic evidence of authenticity in order to be admitted[,]" including domestic and foreign public documents and certified copies of public records).  By way of example, the

- 9 -

trial court recounted that "Mother testified she was in the process of obtaining housing through [the Philadelphia Housing Authority] and only needed an electricity bill for the screening process." Trial Ct. Op. at 40.  The court ruled the PHA "Waitlist Eligibility Interview Invitation" was not admissible because it was hearsay and not clearly established as a business record.  ***Id.***

We note Mother does not argue that her counsel's conduct **caused** the termination decrees, and we would conclude the record would not support such a finding.  ***See Interest of J.T.***, 983 A.2d at 775.  As Mother points out elsewhere in her brief, she testified "that she had made progress toward her goals and objections . . . since . . . December 2019."  Mother's Brief at 20.  The trial court considered this testimony.  Thus, counsel's alleged ineffectiveness did not result in the complete preclusion of certain evidence.  Instead, the evidence would have merely gone to the weight of other evidence presented, by both Mother and DHS.

Critically, Mother's argument does not acknowledge that the trial court extensively considered her testimony — that she was making progress toward her goals — with the evidence by DHS that she was not.  For example, with respect to Mother's claim that she attempted to secure housing, the trial court considered Case Manager Jackson's testimony to the following:

> Mother continues to live with her Maternal Grandmother.  [T]here are concerns with Maternal Grandmother because she was identified as the alleged perpetrator of H.W.'s burn injury.  [T]he home was not structurally inappropriate, however. the barrier with the home is the clutter.  There is no space to place beds in the bedrooms.   Mother has discussed attending different housing

> programs.  Mother has been referred several times to the DHS
> housing unit[,] and she explained to Mother that funds could be
> obtained for a security deposit and first and last month's rent,
> however, Mother would have to show that she would be able to
> pay the rent on her own.  Mother has not shown that and was
> ineligible for the housing program because she was non-compliant
> with her SCP objectives.  Therefore, housing continues to be an
> outstanding objective for Mother.

Trial Ct. Op. at 26, *citing* N.T. 4/28/21, at 72-74.  The trial court also considered DHS' evidence that: Mother admitted she did not want to report her job and income "because she did not want to pay child support for her Children;" Mother's "impulsive, aggressive behavior," which led to, *inter alia*, stay away orders, pertaining to both Case Manager Jackson and the children's resource family's home; denial that the children had special needs or "receive[d] therapeutic services, including for autism;" repeated positive drug screens for opiates; and multiple arrests, charges, and incarceration for unrelated criminal episodes.  ***See id.*** at 19, 22.  In light of the foregoing, which Mother ignores on appeal, we conclude no relief is due on Mother's ineffectiveness assistance of counsel claim.

In her final due process claim, Mother claims "[t]he trial court's statements and conducting during the hearing violated [her] due process rights."  Mother's Brief at 43.  After citing relevant case authority, Mother's argument, in sum, is as follows:

> In this case, the trial court's hostility toward both parents'
> counsel and its abrupt termination of the testimony of [G.J.'s] was
> intemperate and inappropriate, violated the Code of Judicial
> Conduct, and deprived the fathers and Mother of their due process
> rights.

J-A26040-21

*Id.* at 44-45.

Mother does not cite any particular statement or action by the court in support of her contention that the court acted with "hostility." **See** Mother's Brief at 44.  Her brief statement above fails to present any developed discussion.  Accordingly, this issue is waived. **See** Pa.R.A.P. 2119(a); **Harris**, 880 A.2d at 1279.

### V.  Termination of Mother's Parental Rights

Next, Mother asserts the termination decrees were not supported by clear and convincing evidence.  She discusses the Subsection 2511(a)(1) grounds for termination solely, and avers the trial court "failed to focus [on] Mother's conduct during the six months immediately preceding the [February 12, 2021,] filing of the petition and instead relied heavily on evidence from 2019 and 2020 — well over a year before the hearing." **See** Mother's Brief at 46-49. **See** 23 Pa.C.S. § 2511(a)(1) ("[t]he parent by conduct continuing for **a period of at least six months immediately preceding the filing of the petition** either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties[ ]").  In support, Mother cites the trial court's consideration of: (1) Dr. Russell's testimony, which "was based on his interview of Mother [on] December 11, 2019[;]" (2) Dr. Russell's March 1, 2020, report; (3) a "BHS Clinic Evaluation Progress Report" and "Urine Drug Testing Reports" for Mother, all dated February of 2020; (4) Mother's March 5, 2020, failure to appear for a CEU assessment;

- 12 -

(5) Mother's March 13, 2020, arrest; and (6) another trial judge's June 8, 2020, order.  Mother's Brief at 48 (emphases omitted).  We conclude no relief is due.

> We note the relevant standard of review:
>
> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions.  However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings.  The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights.  *See* 23 Pa.C.S. § 2511.  It requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d at 511 (citations omitted).  We need only agree with the court as to any one subsection of 2511(a), in addition to subsection 2511(b), to affirm.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).  We note Mother presents no challenge pertaining to Subsection 2511(b).

- 13 -

J-A26040-21

Here, the trial court found grounds for termination of Mother's parental rights under Subsections 2511(a)(1), (2), (5), and (8).  As stated above, her argument on appeal refers only to Subsection (1).  This Court could affirm on the basis of Mother's lack of any challenge under the other subsections.  ***See In re B.L.W.***, 843 A.2d at 384.  Furthermore, we emphasize that Mother's sole claim is that the trial court erred in considering "old" evidence, rather than evidence pertaining to the six-month period immediately preceding DHS's petitions.

We consider the grounds for termination under Subsection (2):

> **(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> \*   \*   \*

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[ ] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

- 14 -

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Unlike the other subsections of Section 2511(a), Subsection (2) does not set forth a time frame for a court's consideration of the parent's conduct. *See* 23 Pa.C.S. § 2511(a)(1) (referring to the parent's conduct "of at least six months immediately preceding the filing of the petition"), (5) ("The child has been removed from the care of the parent . . . for a period of at least six months . . . ."), (6) (pertaining to "a newborn child"), (8) ("12 months or more have elapsed from the date of removal or placement"). Mother does not present, and we have not discovered, any legal authority that a court is precluded from considering relevant evidence presented in earlier proceedings of the same dependency matter. Accordingly, no relief is due on Mother's challenge to the termination decrees.[5]

_____

[5] As Mother does not present argument pertaining to Subsection 2511(b), we decline to *sua sponte* address it. This Court has observed:

> We acknowledge that panels of this Court have sometimes relied on *In re C.L.G.*, 956 A.2d 999 (Pa. Super. 2008) (*en banc*), to address Section 2511(b), even where the appellant has made no effort to present a challenge regarding that section. In *C.L.G.*,

*(Footnote Continued Next Page)*

- 15 -

## VI.  Goal Change to Adoption

In her final issue, Mother presents a multitude of claims, contending the trial court's goal change orders were not supported by clear and convincing evidence.  For ease of review, we first set forth the relevant legal authority, and then address her arguments *seriatim*.

We first note:

> When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion.  In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record.  We are bound by the trial court's findings of fact that have support in the record.  The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony.  In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence.  When the trial court's findings are supported by competent evidence of

---

> this Court . . . initially analyzed the trial court's decision to terminate pursuant to Section 2511(a)(8).  We . . . then proceeded to address Section 2511(b), even though the appellant mother did not present any challenge regarding that section.  This Court did not provide an explanation for its decision to address Section 2511(b).  We merely stated: "Although Mother does not challenge the trial court's analysis of Section 2511(b), we proceed to address this issue nonetheless."  *Id.* at 1010.  We do not read *C.L.G.* to require consideration of Section 2511(b) in every appeal from a decree involuntarily terminating parental rights.  This Court did not hold that consideration of Section 2511(b) was necessary in *C.L.G.*, nor did we cite any authority in support of our decision to address Section 2511(b) *sua sponte*.

*In re M.Z.T.M.W.*, 163 A.3d 462, 466 n.3 (Pa. Super. 2017).

- 16 -

record, we will affirm even if the record could also support an opposite result.

***In re A.K.***, 936 A.2d 528, 532-33 (Pa. Super. 2007) (citation omitted).

With respect to a goal change:

The best interests of the child, and not the interests of the parent, must guide the trial court.  ["A] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting."

***In re A.B.***, 19 A.3d 1084, 1089 (Pa. Super. 2011) (citations omitted).

When the child welfare agency has made reasonable efforts to return a foster child to his or her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home.  This Court has held that the placement process should be completed within 18 months.

\*   \*   \*

While this 18-month time frame may in some circumstances seem short, it is based on the policy that a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

***In re A.K.***, 936 A.2d at 533 (citation omitted).

Section 6351(f) of the Juvenile Act[6] provides:

**(f) Matters to be determined at permanency hearing.—** At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

---

[6] 42 Pa.C.S. §§ 6301-6375.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

(7) If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.

(8) The services needed to assist a child who is 14 years of age or older to make the transition to successful adulthood.

(8.1) Whether the child continues to meet the definition of "child" and has requested that the court continue jurisdiction pursuant to section 6302 if the child is between 18 and 21 years of age.

(8.2) That a transition plan has been presented in accordance with section 475 of the Social Security Act (49 Stat. 620, 42 U.S.C. § 675(5)(h)).

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

\*   \*   \*

(10) If a sibling of a child has been removed from his home and is in a different placement setting than the child, whether reasonable efforts have been made to place the child and the sibling of the child together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

(11) If the child has a sibling, whether visitation of the child with that sibling is occurring no less than twice a month, unless a finding is made that visitation is contrary to the safety or well-being of the child or sibling.

(12) If the child has been placed with a caregiver, whether the child is being provided with regular, ongoing opportunities to participate in age-appropriate or developmentally appropriate activities.  In order to make the determination under this paragraph, the county agency shall document the steps it has taken to ensure that:

(i) the caregiver is following the reasonable and prudent parent standard; and

(ii) the child has regular, ongoing opportunities to engage in age-appropriate or developmentally appropriate activities. The county agency shall consult with the child regarding opportunities to engage in such activities.

42 Pa.C.S. § 6351(f)(1)-(12).

J-A26040-21

In the instant appeal, Mother avers the trial court failed to consider **all** the statutory factors of 42 Pa.C.S. § 6351(f):

> The trial court's summary conclusions about each child reveal that the court focused on Mother's actions and gave insufficient weight to the best interests of the children.  ***See In re B.S.***, 861 A.2d [974, 978 (Pa. Super. 2004)] (holding that trial court erred by focusing on Mother's parenting skills instead of child's best interests).  The court does not discuss the bond between the children and their mother or provide facts to support its sweeping conclusion that there is no "real parental relationship" between [J.B.] and his parents.

Mother's Brief at 57.  We disagree.

The trial court's analysis was not delineated to specifically address each Section 6351(f) factor in turn.  Nevertheless, the court's opinion thoroughly discussed the evidence presented and its findings.  We disagree with Mother's claim that the trial court improperly "focused" on her actions, while ignoring the children's best interests and her bond with them.  ***See*** Mother's Brief at 57.  The court considered Case Manager Jackson's testimony that "Mother was generally consistent with visitation from 2019 until March 2020."  Trial Ct. Op. at 27-28.  However, with regard to

> the quality of the visits, Ms. Jackson testified Mother was aggressive with J.B. more than she was with the other two Children.  She indicated to him that he needed to keep his mouth shut and not tell people things because that's why the Children were in Foster Care.  When the visits became virtual there were more issues[.]  Mother would use the time to insult the Caregivers and spent little time interacting with the Children.  Mother told J.B. that he needed to watch out for his brothers and if anybody touched them, J.B. was to get a knife and stab them.  Ms. Jackson stated she discussed with Mother the inappropriateness of her comments and urged her to use the time to bond with her Children.  She noted that in April 2020, during virtual visits,

- 20 -

Mother would refer to the Foster Parents in derogatory homophobic terms and indicated to the Children not to let the Foster Parents touch them because the women touch each other. The Children were between the ages of two and seven years old at this time.

[Case Manager Jackson] noted that the visits became in-person in September of 2020, and Mother's visits became supervised one hour once per week at the Agency. The visits were decreased because of the content of the visits and Mother's behavior during the visits. Mother did not have contact with the Children from November 2020 until February 2021 because she was incarcerated. Ms. Jackson testified she reached out to Montgomery County Prison to schedule contact, however, they never followed through were her requests.

Ms. Jackson noted that J.B. stopped attending the visits before Mother was incarcerated. He stated he did not want to visit with Mother and asked if he was forced to see her. J.B. told her his Mother was mean and she made him feel bad about himself and he did not want to visit with her. She also noted that after visits with his Mother. J.B. would exhibit negative behavior, was in a bad mood and very defiant.

[Case Manager Jackson] noted that during the time Mother was incarcerated the Children did not ask for her. [N.T., 4/28/21, at 80-88.]

Ms. Jackson opined that the Children would not suffer irreparable harm if Mother's parental rights were terminated. J.B. does not look to Mother for support and comfort and is not bonded to her. In fact. he specifically stated he feels bad about himself when he is with her.

Regarding H.W., he does not display any attachment to Mother.

Regarding M.J., who was two months old when he came into care, he has not developed a maternal-child bond with Mother. Ms. Jackson testified she has not observed a parental bond between Mother and the Children. She opined these Children do not have a parental bond with Mother and would not suffer irreparable harm if Mother's rights were terminated. [N.T., 4/28/21, at 88-91.]

Trial Ct. Op. at 27-29 (paragraph breaks added).  The trial court found Case

Manager Jackson's testimony to be credible.

> The trial court also found credible
>
> persuasive testimony from Mike Graves, Esquire, [the child advocate for J.B..  He] testified he spoke to J.B., who is seven and one-half years old, and explained Adoption and his other options. It appeared to him that [J.B.] understood what Adoption was and told him he was fine where he was now.  J.B. told him he would like to be Adopted, however, he also stated that he did want to still have visitation with his parents, and his prior caretakers. [N.T., 6/1/21, at 73-74.]

Trial Ct. Op. at 33.

Finally, the trial court weighed the above evidence with Mother's

testimony that "she maintains an emotional connection with her Children and

shows them affection during visits.  She stated the Children are happy to see

her and that she can provide a loving and stable home for them now at her

Grandmother's house" in Philadelphia.  Trial Ct. Op. at 31.

Ultimately, the trial court concluded Mother did not have a bond with

any of the Children, and that termination and adoption were in the Children's

best interests.  In its opinion, the court incorporated the statements it made

at the June 1, 2021, hearing:

> The evidence in this case goes back for a substantial period of time beginning with the adjudication of these children, based upon the circumstances then.  We'll start with J.B.  Here the record is clear, convincing that the parents have done nothing to remedy the issues that brought this child into court.  Neither parent is ready, willing and able to care for this child at this time.

> There's a substantial credibility issue between what [M]other believes to be her case and what the reality is.  And I give little weight to [M]other's testimony.  The case worker that testified has an extremely comprehensive grasp on the facts and the history of this case, understands these children.
>
> Mother lives in a kind of fantasy world where she believes that she can keep treating [sic].  Although she has no symptoms she continues to treat for drug and alcohol issue and mental health issues and she says, I don't have any drug issues or mental health issues.  But I think the inference to be drawn from that is she does.
>
> And I believe, based on her testimony and some of the irrational beliefs and the deceptive testimony by [M]other, indicates that she has no awareness of what it takes to raise a child.  She believes that this child, as well as the other children, can just kind of hang around for a little while and maybe mom will be able to complete all of her objectives and begin to think about parenting a child.
>
> The very fact that she wants to live in a home with a grandparent who was involved and responsible for the original injuries that brought this child into care suggests that she has no concept of reality.  And it doesn't appear that she's going to be able to gain that context with any near — in any future period of time.

Trial Ct. Op. at 43, *quoting* N.T., 6/1/21, at 74-76.

These findings, while disadvantageous to Mother's case, disprove her contention that the court did not consider whether any bond existed.  ***See*** Mother's Brief at 57.

Mother next argues the trial court failed to "address any timeframe for when [adoption] might happen" or "whether efforts should be made to place the children in the same home[,]" in contravention of 42 Pa.C.S. § 6351(f)(5) and (10).  Mother's Brief at 57.

- 23 -

We note that at the June 1, 2021, hearing, Case Manager Jackson testified that the three children were currently in different foster homes.  N.T., 6/1/21, at 79.  However, her agency would "continue the search for either one of these foster parents or another foster parent so that the children may be adopted together."  *Id.* at 80.  Furthermore, the trial court addressed Case Manager Jackson's April 28, 2021, testimony in its opinion:

> Ms. Jackson stated . . . there is a possibility that one of the Foster Parents who is currently fostering M.B., stated [sic] once she stabilized M.B., she would be willing to have the other two Children join their sibling at her house.  Ms. Jackson opined that the Children would benefit from positive long-term parental relationships.  [N.T., 4/28/21, at 104-105.]

Trial Ct. Op. at 29.

Contrary to Mother's unsupported claim, the trial court did consider whether efforts were made to place the children in the same home.  *See* 42 Pa.C.S. § 6351(f)(10); Mother's Brief at 57.  Although the trial court did not specify a "likely date by which the placement goal for the [Children] may be achieved," we do not find an abuse of discretion.  *See* 42 Pa.C.S. § 6351(f)(5).  As of the June 1, 2021, hearing, the children were in foster placement and the Turning Points for Children case manager testified they had been searching for a home where all three children could live together.

Finally, Mother claims the trial court improperly "deferred to the opinions of Dr. Russell (who interviewed Mother in 2019) and [Case Manager] Ms. Jackson, rather than decide based on all the evidence presented at trial."  Mother's Brief at 58.  She also argues the trial court erred in not considering

the thirteen documents that the court had ruled inadmissible on hearsay grounds. ***Id.*** at 59, *citing* Pa.R.Juv.Ct.P. 1608(C)(1) ("Any evidence helpful in determining the appropriate course of action, including evidence that was not admissible at the adjudicatory hearing, shall be presented to the court.").

As stated above, the trial court found Case Manager Jackson's and Dr. Russell's testimony to be credible, and specifically found Mother's testimony not credible. The trial court was free to believe all, part, or none of the evidence. ***See In re A.K.***, 936 A.2d at 532-33. Mother's arguments go to the weight to be afforded the evidence, and her requested relief would require this Court to supplant the trial court's credibility determinations and findings of fact with our own. This we cannot do. ***See id.*** Instead, we determine the court's findings are supported by the record, and accordingly, we do not disturb them.

## VII.  Conclusion

As Mother has not presented any meritorious claim for relief, we affirm the three termination orders and three goal change orders. The parties are directed to attach a copy of the trial court opinion to this memorandum in the event of further proceedings.

Orders affirmed.

J-A26040-21

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2021